[Cite as *State v. Heard*, 2013-Ohio-3037.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY   COUNTY

STATE OF OHIO                                              :
                                                          :        Appellate Case No. 25637
        Plaintiff-Appellant                 :
                                                          :        Trial Court Case No. 2012-CR-1593
v.                                                        :
                                                          :
SHEM L. HEARD                                             :        (Criminal Appeal from
                                                          :         Common Pleas Court)
        Defendant-Appellee                  :
                                                          :

. . . . . . . . . . .

O P I N I O N

Rendered on the 12th day of July, 2013.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by R. LYNN NOTHSTINE, Atty. Reg. #0061560, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellant

GEORGE A. KATCHMER, Atty. Reg. #0005031, 1886 Brock Road NE, Bloomingburg, Ohio 43106
        Attorney for Defendant-Appellee

. . . . . . . . . . . .

HALL, J.,

{¶ 1}    The State of Ohio appeals from the trial court's decision and entry sustaining defendant-appellee Shem L. Heard's motion to suppress the evidence against him.[1]

---

[1] Pursuant to Crim.R. 12(K), the State has filed notice that its appeal is not being taken for purposes of delay and that the

{¶ 2}    The State advances two assignments of error on appeal. First, it challenges the trial court's finding that a stop of Heard's vehicle was unlawful because police lacked reasonable, articulable suspicion of a traffic violation. Second, it claims the trial court erred in finding that Heard did not voluntarily consent to a search of his vehicle.

{¶ 3}    The record reflects that a grand jury indicted Heard on one count of cocaine possession, a third-degree felony. He subsequently moved to suppress the cocaine, which police found during a search of his vehicle following a traffic stop. The trial court held a December 4, 2012 hearing on the motion. In a February 8, 2013 suppression ruling, it made the following findings of fact:

> * * * Officer Steven Hupp ("Officer Hupp") has been with the Sinclair Police Department for six years. On May 24, 2012, Officer Hupp and Officer Noah Sebastinas ("Officer Sebastinas") were on patrol outside of the Sinclair Community College campus on a street in the City of Dayton. At 8:30 p.m. that night, Officer Hupp was traveling westbound on Washington Street and observed a black pickup truck traveling in the same direction that turned northbound onto Longworth Street. Officer Hupp observed a weight bench in the bed of the truck and as the truck made the northbound turn, the weight bench shifted and almost fell out of the truck. Officer Hupp stopped the truck for violation of unsecure[d] load. Further, when Officer Hupp observed the weight bench, he tried to get a license plate number, but a ball hitch on the truck was covering the license plate. Officer Hupp said the "unsecure[d] load" was a secondary offense to the license

suppression ruling has rendered its proof so weak that any reasonable possibility of effective prosecution has been destroyed.

plate being "not readable" to him. Officer Hupp then initiated a traffic stop.

When Officer Hupp got out of his police cruiser and walked up to the truck, he was able to read the truck's license plate number. Officer Hupp initiated contact with the Defendant and informed him the reasons for the stop. While Officer Hupp was speaking to the driver, dispatch relayed to him that the registered owner of the truck, the Defendant, had prior drug convictions, but no further information regarding the date of the conviction was provided. Officer Hupp asked the Defendant for his license and insurance and the Defendant provided the same. Officer Noah Sebastinas ("Officer Sebastinas") asked who the vehicle belonged to and the Defendant responded that he owned the truck. The Defendant looked for the registration in the glove compartment but was unable to locate the same. Officer Hupp then asked the Defendant if there is "anything in the car I need to be concerned about" and the Defendant said "no." The Defendant was immediately instructed to turn off the vehicle. Officer Hupp asked "you don't have any problem with me looking." The Defendant indicated that he had his keys in his pocket but Officer Hupp instructed him not to reach for anything. Officer Hupp asked again if there was anything in the truck that he needed to be concerned about and the Defendant again replied "no." Officer Hupp said "you don't mind if I check" and the Defendant said "sure, I ain't got no weapons on me."

The Defendant and his passenger got out of the truck and Officer Hupp searched the vehicle. On the passenger side of the truck, Officer Hupp pulled back

the bench seat and saw a clear plastic bag with a white powdery substance. The Defendant was placed under arrest at this time. Officer Sebastinas advised the Defendant of his Miranda rights.

(Doc. #20 at 1-2).

{¶ 4}    After making its factual findings, the trial court concluded that the officers lacked reasonable, articulable suspicion to stop Heard's vehicle. With regard to the allegedly unsecured load, it held that the facts did not establish a violation of R.C. 4513.31(A), which provides: "No vehicle shall be driven or moved on any highway unless the vehicle is so constructed, loaded, or covered as to prevent any of its load from dropping, sifting, leaking, or otherwise escaping therefrom * * *." The trial court reasoned that the unsecured weight bench did not violate the statute because it "did not drop, sift, leak, or otherwise escape from the vehicle." (*Id*. at 5). As for Heard's license plate, the trial court found no violation of R.C. 4503.21, which governs the display of license plates. The trial court noted that the only thing obstructing Heard's license plate was a hitch and that Officer Hupp was able to read the plate upon approaching the vehicle. (*Id*. at 5-6).

{¶ 5}    In addition to finding no lawful basis to stop Heard's vehicle, the trial court addressed his consent to search. It reasoned:

> The Court takes issue with Officer Hupp's request for consent to search the Defendant's vehicle. Officer Hupp testified that while he was speaking to the suspect he was advised over his earpiece that the Defendant had a prior drug conviction. However, Officer Hupp did not know the date of the drug conviction or any additional information. From this point, the traffic stop took a sharp turn

into a search of the Defendant's vehicle. The Court finds that Officer Hupp's request for consent to search the vehicle begins when he asks the Defendant if there is "anything in the car I need to be concerned about" and the Defendant says "no." Officer Hupp instructs the Defendant to turn off the vehicle and asks "you don't have any problem with me looking." The Defendant indicates that he has his keys in his pocket but Officer Hupp instructs him not to reach for anything. Officer Hupp asks again if there is anything in the truck that he needs to be concerned about and the Defendant again replies "no." Officer Hupp says "you don't mind if I check" and the Defendant says "sure, I ain't got no weapons on me." It is not clear to the Court that the Defendant consented to the search of the vehicle and that it is reasonable to find that the Defendant was consenting to a search for weapons on his person.

* * *

The Court believes that the consent to search was not obtained voluntarily, but the Court does not need to reach that finding, and does not do so in this case, since the Court finds that there was no reasonable, articulable suspicion to stop the vehicle.

(*Id*. at 3-4).

{¶ 6} On appeal, the State contends the trial court erred in suppressing the cocaine found in Heard's car. Specifically, the State challenges the trial court's finding that the officers lacked reasonable, articulable suspicion to stop the vehicle.[2] The State also addresses the

---

[2] The State's assignments of error do not challenge the trial court's finding that the license-plate statute, R.C. 4503.21, was not

consent-to-search issue, arguing that Heard validly consented to a search of his vehicle. In response, Heard contends that "while the weight bench on the bed of the truck moved, the gate of the truck was closed and at no time was there any danger that the bench would drop or otherwise escape from the truck bed." Heard's appellate brief does not address the validity of his consent to search.

{¶ 7} In ruling on a motion to suppress, a trial court "assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." (Citation omitted.) *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994). As a result, when we review suppression decisions, "we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." *Id.*

{¶ 8} Here the record generally supports the trial court's factual findings regarding the traffic stop. The first issue on appeal is whether those factual findings support the trial court's legal conclusion that the officers lacked a lawful basis to stop Heard's vehicle. Applying a de novo standard of review, we disagree with the trial court's resolution of that legal issue. *See State v. Hughes*, 2d Dist. Montgomery No. 25152, 2013-Ohio-808, ¶14 (applying de novo review to determine whether the facts found by the trial court justified suppression of the evidence).

{¶ 9} The applicable statute, R.C. 4513.31(A), provides that "[n]o vehicle shall be driven or moved on any highway unless the vehicle is so constructed, loaded, or covered as to prevent any of its load from dropping, sifting, leaking, or otherwise escaping therefrom[.]" Here

---

violated.

the trial court found that a "weight bench shifted and almost fell out of the truck" when Heard made a right-hand turn. This finding is supported by Officer Hupp's suppression-hearing testimony. Officer Hupp explained that "the weight bench shifted and started to go and topple over to the driver's side of the vehicle and almost into the southbound lane of traffic." (Suppression Tr. at 7). He saw the bench "hanging out the side of the truck" as Heard turned. (*Id.* at 32). The video and photograph exhibits introduced show part of the apparatus extending about a foot out of the left side of the truck bed.

{¶ 10} In our view, Officer Hupp's observations gave him reasonable, articulable suspicion to believe Heard had violated R.C. 4513.31(A) by not loading his vehicle so as to prevent the weight bench from falling out of the truck bed. Contrary to the trial court's ruling, we do not believe the bench actually was required to fall off of the vehicle. *See State v. McDonald*, 5th Dist. Licking No. 99CA-0123, 2000 WL 699717, *3 (May 5, 2000) (reading R.C. 4513.31(A) "to contemplate the prevention of a load dropping or otherwise escaping as opposed to an actual drop or escape"); *Lawson v. Cox*, 4th Dist. Lawrence No. 1587, 1983 WL 3168, *2 (April 1, 1983) (finding a violation of R.C. 4513.31 where a piece of lumber in a truck bed "was sticking out over the left side"). Because the officers had reasonable, articulable suspicion of a traffic violation, the State's first assignment of error is sustained.

{¶ 11} In its second assignment of error, the State argues that Heard validly consented to a search of his vehicle. Although the trial court found it unnecessary to resolve that issue, it tentatively expressed a belief that his consent was invalid. As set forth above, the trial court stated: "The Court believes that the consent to search was not obtained voluntarily, but the Court does not need to reach that finding, and does not do so in this case * * *." (Doc. #26 at 4).

{¶ 12} In light of our finding above that the officers lawfully stopped Heard's vehicle, resolution of the consent issue becomes critical. Rather than decide the issue in the first instance ourselves, we find it appropriate to allow the trial court to make the necessary findings and a definitive ruling on remand. Based on our review of the trial court's suppression decision, we are uncertain whether it believed (1) the State failed to prove that Heard had in fact consented, (2) Heard had limited the scope of his consent to a search of his person, or only for weapons, and/or (3) Heard consented as a result of unlawful coercion. In any event, these are issues for the trial court to consider and resolve on remand.

{¶ 13} The judgment of the Montgomery County Common Pleas Court is reversed, and the cause is remanded for further proceedings consistent with this opinion.

. . . . . . . . . . . . .

FROELICH and WELBAUM, JJ., concur.


Copies mailed to:

Mathias H. Heck
R. Lynn Nothstine
George Katchmer
Hon. Dennis J. Adkins